# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00048-COA

**JEYCOB ENGLAND**                                                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2013 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 01/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Jeycob England was convicted of manslaughter in the death of Scott Ford, and sentenced to twenty years in the custody of the Mississippi Department of Corrections. England appeals his conviction and sentence, asserting two grounds: (1) the State's medical expert's testimony violated England's Confrontation Clause right; and (2) England received an illegal sentence above the statutory maximum.  This Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 22, 2011, England went to the Electric Cowboy, a bar in Jackson, Mississippi, with his girlfriend, Bridget Gagliardi, and his friend, Christian Craft.  Also at the club were Ford and his friends, Christopher Fodi, Noel Castillo, Ryan Connelly, and Mark Laxton.  When the club closed for the night, Ford allegedly waved to Gagliardi, whom he met a couple of months earlier.  England disliked Ford's interaction with Gagliardi, and a verbal altercation between Ford and England ensued.

¶3.     After the men separated, each got into a different car and left the club.  Coincidentally, the two cars went to the same gas station down the street from the club.  Once again, England and Ford got into a shouting match.  The men decided to have a physical fight, but wanted to go somewhere other than the gas station.  England, who drove Gagliardi and Craft, backed into the other car driven by Laxton on the way out of the gas station.  Both cars continued down the road until they reached the Target parking lot.

¶4.     Once at the parking lot, Craft decided to fight for England in a one-on-one fight against Ford.  Witness accounts vary greatly as to what happened next. Craft apparently attempted to tackle Ford at the knees, but Ford got the upper hand and placed Craft in a headlock.  At some point, England and the other men joined in the fight until England broke away from the group and reached his car.

¶5.     Castillo, Connelly, and Fodi testified the fight essentially ended with everyone returning to their respective cars, when they heard England's car coming towards the group.  The men were walking in a line with Ford on the far left of the group.  Everyone got out of

the way of the car, except Ford, who was hit with the right-front of the car. The car ran over Ford before speeding off through the parking-lot exit and onto the interstate.

¶6. In contrast, England, Craft, and Gagliardi testified that the fight was still ongoing at the time England hit Ford. Craft stated he was able to get up just before England hit Ford. England testified he drove towards the crowd to save Craft from the other men, and unintentionally ran over Ford. Ford subsequently died from his injuries.

¶7. A Hinds County grand jury indicted England for deliberate-design murder under Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2006) on August 31, 2011. The jury found England guilty of the lesser-included offense of manslaughter, for which the trial court sentenced him to twenty years in prison. England initially appealed his conviction alleging a Confrontation Clause violation because Dr. Mark LeVaughn testified about Ford's autopsy and toxicology results, but did not conduct the autopsy and toxicology tests himself. England then filed a supplemental brief attacking his sentence as illegal. This Court will address both issues.

ANALYSIS

¶8. England asserts the trial court erred in letting Dr. LeVaughn testify about his final autopsy report when he did not conduct the autopsy himself. England also finds error in Dr. LeVaughn relying on and testifying about Ford's toxicology report, which he did not conduct or prepare himself. Further, England argues his sentence of twenty years for manslaughter violates the statutorily set maximum sentence for a death caused by a motor vehicle.

> I.      *Whether Dr. LeVaughn's testimony violated England's constitutional right to confront the witnesses against him.*

3

¶9.     At trial, the State's expert witness, Dr. LeVaughn, testified about Ford's final autopsy report.  England objected on grounds of a Confrontation Clause violation because Dr. Adel Shaker, not Dr. LeVaughn, performed Ford's autopsy and created the preliminary autopsy report.  England also objected because Dr. LeVaughn did not perform the toxicology test he relied on in making his final report.

¶10.    An appellate court's "standard of review regarding admission or exclusion of evidence is abuse of discretion." *Jenkins v. State*, 102 So. 3d 1063, 1065 (¶7) (Miss. 2012) (citing *Smith v. State*, 25 So. 3d 264, 269 (¶11) (Miss. 2009)).  However, "[c]onstitutional issues are reviewed de novo." *Id.*

¶11.    The United States and Mississippi Constitutions guarantee the right of the defendant to confront witnesses against him.  U.S. Const. amend. VI; Miss. Const. art. 3, § 26.  "The United States Supreme Court has held that the Sixth Amendment Confrontation Clause bars the admission of 'testimonial statements' made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him." *Jenkins*, 102 So. 3d at 1066 (¶9) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 59 (2004)).  "Forensic laboratory reports created specifically to serve as evidence against the accused at trial are among the 'core class of testimonial statements' governed by the Confrontation Clause." *Id.* (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009)).

¶12.    However, the Mississippi Supreme Court has held that, "[b]y contrast, when the testifying witness is a court-accepted expert in the relevant field who participated in the

analysis in some capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." *McGowen v. State*, 859 So. 2d 320, 339 (¶68) (Miss. 2003).

> To determine if a witness satisfies the defendant's right to confrontation, we apply a two-part test: First, we ask whether the witness has "intimate knowledge" of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. Second, we ask whether the witness was "actively involved in the production" of the report at issue. We require a witness to be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause.

*Jenkins*, 102 So. 3d at 1067 (¶13) (internal citations omitted). Using this framework, this Court must decide whether Dr. LeVaughn could testify about the final autopsy report or the toxicology report without violating England's right to confrontation.

¶13. Looking to the test, this Court must ascertain whether Dr. LeVaughn possessed "intimate knowledge" and was "actively involved in the production" of the autopsy report. England primarily objected to Dr. LeVaughn's testimony about Ford's final autopsy report because Dr. LeVaughn did not participate in the actual autopsy. Dr. LeVaughn, however, reviewed Dr. Shaker's preliminary report, along with other records and photographs, in creating his own final report.

¶14. In *Gossett v. State*, 660 So. 2d 1285, 1296 (Miss. 1995), the Mississippi Supreme Court found that the trial court erred in admitting an autopsy report when the person who conducted the autopsy and authored the report failed to testify. Unlike in *Gossett*, however, Dr. LeVaughn authored the final autopsy report. Though he relied on Dr. Shaker's preliminary autopsy findings, Dr. LeVaughn testified only to his final autopsy report, which

5

contained his own findings and opinions. As such, Dr. LeVaughn had intimate knowledge of the report and actively participated in the production of the report. Therefore, Dr. LeVaughn's testimony about his final autopsy report did not violate England's Confrontation Clause right.

¶15. Regarding the toxicology report, Dr. LeVaughn did not create the toxicology report, but only used the report to complete his final autopsy report. At trial, Dr. LeVaughn testified that he had no knowledge of the preparation or analysis of the toxicology report. Further, Dr. LeVaughn testified as an expert in the field of pathology as a medical examiner, not as an expert in toxicology. Therefore, Dr. LeVaughn's testimony about the toxicology report violated England's confrontation right.

¶16. This error, however, was harmless. The supreme court has held that "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." *Haynes v. State*, 934 So. 2d 983, 991 (¶31) (Miss. 2006) (quoting *Clark v. State*, 891 So. 2d 136, 142 (¶29) (Miss. 2004)). The trial court limited Dr. LeVaughn's testimony to the manner and cause of death. However, England only disputed his intent to kill Ford, not whether he hit and killed Ford with his car. Dr. LeVaughn's testimony about Ford's toxicology report did not attest to England's intent to kill Ford. In fact, Dr. LeVaughn specifically testified that he could not determine England's intent. Only the eyewitnesses and England's testimony alluded to England's intent.

¶17. Further, Dr. LeVaughn's testimony constituted cumulative testimony. Several

eyewitnesses testified to the incident and detailed how Ford died. The evidence sufficiently showed that England drove the car that hit Ford and Ford died as a direct result of his collision with the car. Also, Dr. LeVaughn's primary testimony about the toxicology report involved Ford's blood-alcohol level, which was not at issue. This Court finds the admission of Dr. LeVaughn's testimony about Ford's toxicology report was harmless. This issue is without merit.

> II. *Whether England received an illegal sentence above the statutory maximum.*

¶18. England filed a pro se supplemental appellate brief asserting that he received an illegal sentence. This Court first notes that England raises this issue for the first time on appeal. "A contemporaneous objection must be made at trial in order to preserve an issue for appeal." *Foster v. State*, 148 So. 3d 1012, 1015-16 (¶10) (Miss. 2014) (quoting *Cox v. State*, 793 So. 2d 591, 599 (¶33) (Miss. 2001)). "Errors related to improper sentencing are procedurally barred if no objection is made at trial." *Id.* at 1016 (¶10) (quoting *Hughes v. State*, 983 So. 2d 270, 282 (¶54) (Miss. 2008)). Therefore, England failed to preserve this issue for appellate review.

¶19. Regardless of the procedural bar, this Court will address the merits of this issue. "Sentencing is within the discretion of the trial court and will not be disturbed on appeal absent a finding of [an] abuse of discretion." *Oliver v. State*, 20 So. 3d 16, 19-20 (¶5) (Miss. Ct. App. 2009) (citation omitted). "This Court will not disturb a sentence that is imposed as long as the sentence is within the terms set forth in the statute." *Id.* at 20 (¶5) (citing *Lee v. State,* 918 So. 2d 87, 88 (¶4) (Miss. Ct. App. 2006)).

7

¶20. England argues the trial court improperly sentenced him to twenty years when Mississippi Code Annotated section 63-11-30(5) (Rev. 2013) provides for a ten-year maximum penalty for a death caused by an intoxicated person negligently operating a motor vehicle. However, the trial court did not sentence England for vehicular manslaughter while intoxicated under section 63-11-30(5). Instead, England received a twenty-year sentence for manslaughter under Mississippi Code Annotated section 97-3-47 (Rev. 2014).

¶21. Mississippi Code Annotated section 97-3-25(1) (Rev. 2014) provides the sentencing guidelines for manslaughter and states that "any person convicted of manslaughter shall be . . . in the custody of the Department of Corrections not less than two (2) years, nor more than twenty (20) years." Therefore, the trial court properly sentenced England to the maximum sentence allowed by statute. This issue is without merit.

¶22. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**

8