KING, PRESIDING JUSTICE, DISSENTING:
 

 ¶34. Because the violation of Morrow's constitutional right to confront witnesses against him amounts to plain error, and because insufficient information is in the record before this Court to determine whether ineffective assistance of counsel occurred, I respectfully dissent.
 

 1. Confrontation Clause
 

 ¶35. This Court has established that a Confrontation Clause violation is a violation of a fundamental, substantive right under plain error review.
 
 Conners v. State
 
 ,
 
 92 So. 3d 676
 
 , 682 (Miss. 2012). Both the United States Constitution and the Mississippi Constitution guarantee the right of a criminal defendant to confront and cross-examine witnesses against him. U.S. Const. amend. VI ; Miss. Const. art. 3, § 26. The United States Supreme Court determined that testimonial statements made by a witness who does not appear at trial are inadmissible under the Confrontation Clause, unless the witness is unavailable and the defendant had an opportunity to cross-examine that witness.
 
 Crawford v. Washington
 
 ,
 
 541 U.S. 36
 
 , 53-54,
 
 124 S. Ct. 1354
 
 ,
 
 158 L. Ed. 2d 177
 
 (2004). Documents that are created solely for evidentiary purposes are "testimonial"; therefore, "[f]orensic laboratory reports created specifically to serve as evidence against the accused at trial are among the 'core class of testimonial statements' governed by the Confrontation Clause."
 
 Jenkins v. State
 
 ,
 
 102 So. 3d 1063
 
 , 1066 (Miss. 2012) (quoting
 
 Melendez-Diaz v. Massachusetts
 
 ,
 
 557 U.S. 305
 
 , 310,
 
 129 S. Ct. 2527
 
 ,
 
 174 L. Ed. 2d 314
 
 (2009) ).
 

 ¶36. In this case, the forensic laboratory report was created specifically to serve as
 evidence against Morrow. Therefore, the analyst who performed the testing, or another forensic expert with sufficient involvement with the testing and/or report, must testify regarding the report to satisfy the Confrontation Clause.
 
 Armstead v. State
 
 ,
 
 196 So. 3d 913
 
 , 919-21 (Miss. 2016). While the report itself was not entered into evidence in this case, this Court has examined testimony about a report and testing results under the Confrontation Clause in much the same manner as if the report itself had been admitted.
 

 Id.
 

 at 920 ;
 
 Hingle v. State
 
 ,
 
 153 So. 3d 659
 
 (Miss. 2014) ;
 
 see also
 

 England v. State
 
 ,
 
 195 So. 3d 830
 
 (Miss. Ct. App. 2016).
 

 ¶37. The majority agrees that the State offering the DNA results via surrogate testimony of a former sheriff's department investigator with no apparent relation to the Mississippi Crime Laboratory or to the DNA report produced violated Morrow's right to confront witnesses against him. Crucial to the error is that this testimony was offered not on a tangential issue, but as evidence to prove the central issue in the fondling case: whether Morrow placed his mouth on Ben's penis.
 

 ¶38. Finding an obvious error that affects a fundamental, substantive right in the Confrontation Clause violation, this Court must determine whether such error resulted in a manifest miscarriage of justice, or seriously affected the fairness, integrity, or public reputation of judicial proceedings. In this case, the testimony about the DNA results went to the central element of the criminal charge. The DNA results were not cumulative of other evidence-the only other direct evidence regarding the issue consisted of the statements of the child victim.
 
 [7]
 
 DNA evidence is often powerful evidence. And making the Confrontation Clause violation more unjust is the fact that Morrow's DNA was sent to the crime lab for comparison to the DNA from Ben's sexual assault kit and a match was not found. Morrow was deprived of the opportunity to cross-examine a DNA analyst as to why a match was not found and how that affects the probability that the DNA found on Ben was Morrow's. Instead, the State was able to emphasize the DNA results without any explication of those results or lack thereof.
 
 [8]
 
 The majority, however, chastises Morrow for failing to cross-examine the former officer, who had no knowledge of the process of analyzing DNA or the meaning behind the DNA results, regarding the DNA results. Morrow's failure to emphasize the constitutional violation should not be held against him. Indeed, while holding that the admission of the evidence violated Morrow's right to confront the witnesses against him because a witness with proper knowledge was not present for Morrow to confront in the first place, the majority then paradoxically concludes that "[t]here can be no plain error, reversible violation of the Confrontation Clause when the record contains no effort to confront the statement in question." Maj. Op. ¶ 19. In other words, the majority finds a Confrontation Clause violation. A Confrontation Clause violation means that
 a statement was admitted into evidence that was constitutionally impossible for the defendant to confront. The majority now requires that the defendant confront the impossible-to-confront statement before deeming the Confrontation Clause violation reversible. Such a dangerous holding requiring a defendant to confront a statement that is impossible to confront could effectively eliminate the right to confront witnesses in Mississippi. Thus, the admission of powerful DNA evidence on the ultimate issue through a surrogate witness with no connection to the DNA analysis or report created a manifest injustice, especially given the holes in that evidence that Morrow was unable to explore. Accordingly, this Court should reverse Morrow's conviction and remand the case for a new trial.
 

 2. Ineffective Assistance of Counsel
 

 ¶39. I agree with the majority that Morrow cannot show prejudice for the failure to perfect and file an appeal, given that Morrow's motions for an out of time appeal were granted, new counsel was appointed on appeal, and this Court is hearing his appeal. As to Morrow's claims that his counsel rendered ineffective assistance for the failure to object to the admission of the DNA test, this Court cannot determine on this record whether the outcome of the trial would have changed had trial counsel lodged the objections mentioned. Thus, insufficient information exists in the trial record for this Court to adequately address an ineffective assistance of counsel claim; therefore, this Court should deny relief while preserving Morrow's right to make this argument through a petition for post-conviction relief.
 
 See
 

 Hawkins v. State
 
 ,
 
 255 So. 3d 1264
 
 , 1270 (Miss. 2018). It is inappropriate for the majority to adjudicate this claim on direct appeal. Indeed, the majority admits that this issue requires facts not in the record: the majority claims that the record is absent of any indication of Morrow's trial strategy. Maj. Op. ¶ 19. Yet, the majority then employs conjecture to conclude that it is "
 
 conceivable
 
 that Morrow's trial counsel welcomed the DNA evidence as part of his trial strategy." Maj. Op. ¶ 26 (emphasis added). This issue should be preserved for a petition for post-conviction relief.
 

 ¶40. Thus, because the Confrontation Clause violation resulted in manifest injustice, and because a portion of Morrow's ineffective assistance of counsel claim requires that Morrow prove facts outside the record, I believe that the Court should reverse Morrow's conviction and remand the case for a new trial and should decline to address Morrow's ineffective assistance of counsel claim regarding the failure to object.
 

 KITCHENS, P.J., JOINS THIS OPINION.
 

 The mother's testimony regarding the issue was limited to what Ben told her; she did not directly witness Morrow placing his mouth on Ben's penis.
 

 For example, in its closing argument, the State argued,
 

 Then there was a sexual assault kit done. The results were that it came from a male contributor. No, it didn't say Richard Morrow. It said it came from a male contributor. That is what we got. That is what they sent to us. It came from a male contributor. How many more people do we think sucked this child's penis that day? There's only one person that's been said that did that. There's only one person that that saliva could have come from. There's only one male.